# ROBERT GRAHAM
## *v.*
# RAFAEL GUTIERREZ DEL ARROYO ET AL.

San Juan, Equity, No. 672.

A vendor, under a contract for a deed of land which allows him the usufruct of the land, has no right to remove merchantable timber before the execution of the deed, especially where the existence of the timber is an inducement to the contract.

Opinion filed March 30, 1912.

*Messrs. Sweet & Wilcox* and *N. B. K. Pettingill* for complainant.

*Messrs. C. M. Boerman, Miguel Guerra,* and *Martin Travieso, Jr.,* for defendants.

CHARLTON, Judge, delivered the following opinion:

A contract for a deed in writing was entered into between the parties hereto about the year 1906, under and by virtue of the terms whereof the respondents contracted to deliver to the complainant a merchantable title to three parcels of land in the district of Pueblo Viejo, in the municipality of Bayamon, approximating in area 300 acres. A portion of the largest of the three tracts of land, approximating in area 200 acres, con-

sisted of 19.19 acres of woodland, and upon said tract of woodland were various trees of merchantable size, containing lumber of considerable value.

Near the close of the 'year 1910, and while the contract for a deed was not fully executed, by conveyance from the respondents to the complainant, and payment by complainant to respondents for the same, it appears from the evidence that the respondents, by their agents, entered upon said tract of woodland, and cut and removed therefrom trees of merchantable size, which were used for lumber and as timber, and also trees of smaller size, which were burned into charcoal. Upon December 27, 1910, the complainant made application to this court for a restraining order to prevent the respondents from committing waste upon said tract of woodland by cutting down and removing therefrom trees of value, on the ground that it was in the contemplation of the contract that such trees were a valuable inducement to the complainant in entering into said contract. This court upon said day issued its restraining order, restraining the respondents, their agents, servants, or employees from "cutting, removing, selling, burning, or manufacturing any trees, timber, or wood of any character or kind now standing, being or growing upon the premises, or any part or portion thereof decreed by this court to be by you transferred and delivered to Robert Graham."

The respondents thereafter did refrain from doing any of the acts against which the restraining order of the court had been directed.

Subsequently, and upon February 12, 1912, there was filed on behalf of complainant a petition for the appraisement of the waste alleged to have been committed by the respondents or their

Graham v. Gutierrez del Arroyo.

agents in the removal, from the tract of woodland, of trees of value; and upon February 24, 1912, there was appointed by this court one Fred L. Hunter, who was instructed in said order to proceed upon said premises, and make a survey of the trees which had been removed within a recent time, and to assess the value of such trees.

Before proceeding to make such survey and assessment, the assessor so appointed gave notice to one of counsel for the respondents that he was proceeding upon said premises for the purposes of his appointment, upon a certain day. There appears to have been some difficulty in the delivery of said notice to counsel for the respondents, who at that time was engaged in his official duties as a member of the house of delegates of Porto Rico, and subsequently the assessor appears to have stated to counsel for respondents, verbally, that he would not proceed with such survey until a later day. In the absence of the judge of this court in Mayaguez, the marshal of the court admonished the assessor to proceed with his duties, which he thereupon did; and at the date when he made said survey there were present upon said tract of woodland, and with said assessor, the complainant herein and several other persons, among them, one Ramos, who was related by consanguinity or marriage to Rafael Gutierrez del Arroyo, the principal respondent here.

The assessor appears to be a man of experience in the estimate of timber, both standing and from stumpage, and his report filed herein on March 8, 1912, shows that he made a careful, and as thorough as was possible, examination of the tract in question, the same being densely overgrown with underbrush and standing trees of small diameter. On his oral examination, at the request of counsel for the respondents, Mr. Hunter testified

that he had had some years of experience in scaling lumber from the stump in the United States; that he had observed, in other pieces of woodland, trees of the kind and diameter of those, the stumps of which remained upon the woodland tract in question, and that such examination of actual standing trees confirmed the figures of his report as being conservative; the witness testifying that if an absolutely thorough scaling had been done of every stump remaining, the value of the timber so taken would, in his estimation, have been double the amount which he stated in his report filed March 8, 1912.

The main respondent, testifying on his own behalf, was not very definite as to the dates when the large timber had been removed, the stumps of which still remained. He did say, however, that some timber, in an amount not definitely determined, had been removed by his direction during the latter months of the year 1910. There was also evidence from an adjoining landowner and from a laborer in the employ of the principal respondent, that considerable amounts of timber were removed from said tract by direction of the main respondent during said latter months of 1910. The witness Hunter testified that he was unable to say from a wide experience what time would be necessary to cause by the action of the elements a rotting of stumps of trees of the character of those which had been removed from this tract. He did, however, say that from his experience he was able to state that no stump of any character, even of wood of the hardness of the large trees removed from this tract, could be exposed for any considerable number of years without showing signs of rot and disintegration. In his report he assessed the total damage inflicted by the removal of the trees from said tract at $6,192, and stated, both in his report

Graham v. Gutierrez del Arroyo.

and orally, that this figure was very conservative. He stated further in his report that the complainant, who was present at the time the survey and assessment were made, requested him to reduce the amount which he had estimated by one third, which would be the sum of $4,121. This he did not recommend, but simply stated that it was the request of the complainant.

Under such state of facts, the court is without any means of exact mathematical determination of which trees were removed by the respondents or their agents subsequent to the entering into of the contract between the parties hereto, but, with all the evidence before him, has reached the conclusion that without more definite testimony as to the date of the removal of the large trees, or of any trees, or of exact information as to what uses the timber so removed was put to, or of its value, the value of trees so removed from said woodland tract could be fairly assessed at the sum of $4,000.

It is contended on behalf of the respondents that the word "usufruct," employed by the parties hereto in the contract between them, as permissive to the respondents in relation to the use of the land before its conveyance to the complainant, in accordance with the terms of said contract, contemplated in law the use of the timber which was merchantable upon the woodland tract here considered.

The court is unable to reach the conclusion, as matter of law, that "usufruct" as employed in said contract was, in contemplation of the parties hereto, a practical removal from said tract of all merchantable timber, as the testimony of all the witnesses showed. The complainant testified, without contradiction, that the existence of a considerable amount of merchantable timber

Graham v. Gutierrez del Arroyo.

upon said tract was a moving inducement to him to enter into the contract with the respondents.

It is provided in § 469 of the Civil Code of Porto Rico, in definition of the word "usufruct:"

"Sec. 469.  Usufruct is the right to enjoy a thing owned by another person, and to receive all the products, utilities, and advantages produced thereby, under the obligation of preserving its form and substance, unless the deed constituting such usufruct or the law otherwise decree."

In the case of Mulford v. LeFranc, 26 Cal. 88, Mr. Justice Sawyer, in construing a similar provision in the Spanish law as applicable to lands which once constituted a portion of the province of Mexico, and which lay within the territorial limits of the state of California, quotes (pp. 102–103) from Escriche as follows:  "Usufruct—the right to use and enjoy the property of others; that is, to appropriate its fruits without impairing the substance."

To the same effect is the holding in the case of Heintzen v. Binninger, 79 Cal. p. 5, 21 Pac. 377.  There is a similar provision in the Civil Code of Louisiana, with the same definition, and indeed the cases seem to be unanimous to the effect that a usufruct does not include the right to materially change the status of the property while it is in an indeterminate situation with relation to the parties, in any material way.

The English cases in relation to waste, and in definition of the word "usufruct," and particularly as applicable to standing timber, are uniform to the effect that, in the cases usually arising there, which are the removal by a tenant in possession of standing timber, and the application for an injunction by the person owning the reversion, a removal of merchantable timber, unless

made necessary for the preservation of the rest of the timber, constitutes a waste, and is not contemplated within the legal meaning of the word "usufruct."

The same principle has been decided by the Supreme Court of the United States in the case of Hutchins v. King, 1 Wall. p. 53, 17 L. ed. 544. In this case there was growing timber upon real estate which was covered by a mortgage, and the mortgagor, upon removing or attempting to remove growing timber from the land so mortgaged, was enjoined, the court holding by Mr. Justice Field as follows:

"Growing timber constitutes a portion of the realty, and is embraced by a mortgage of the land. When it is severed from the freehold without the consent of the mortgagee, his right to hold it as a portion of his security is not impaired."

This seems to state with exactness the holding of the courts with relation not only to lands which are covered by mortgage as in that case, but to lands which were in a manner outside the complete domination of either of the parties to this action until the contract had been concluded by performance.

In the petition of complainant for the assessment of waste, prayer is made that the decree of the court shall include also certain unpaid taxes upon the premises here in controversy, and a statement of the treasurer of Porto Rico gives the amount thereof for the fiscal year 1911–12, with surcharges up to March 31, 1912, as being $206.68. As complainant here has been in possession of the premises which are liable for said taxes, for a considerable time, the court will divide the same, and authorize the complainant to retain from the purchase price to be paid, the sum of $103.34 on account of said taxes and surcharges.

In making payment to the respondents, upon receipt of a

VI. Porto Rico—5.

conveyance, the complainant will therefore be authorized to retain from the consideration to be by him paid for said conveyance the sum of $4,000, in repayment for waste committed by the respondents or their agents upon the tract of woodland here under consideration, and $103.34 on account of taxes and surcharges, and it is so ordered.

To which action of the court, counsel for the respondents duly object and except.